| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| ANDRE BOWERS, *pro se*, | |
| Petitioner, | |
| – against – | **MEMORANDUM & ORDER** |
| JOSEPH NOETH, Superintendent | 17-cv-01967 (ERK) |
| Respondent. | |

KORMAN, *J.*:

### BACKGROUND

Petitioner Andre Bowers seeks habeas corpus relief from robbery convictions rendered in New York state court.[1]  On December 6, 2008, after 2:00 A.M., six men robbed the Jen-u-Win Sports Bar located in the basement of the building at 180-18 Hillside Avenue in Queens.  Three men acted as lookouts while three others entered the bar wearing masks.  Two of those entering carried guns.  The robbers forced the approximately thirteen occupants of the bar to lie face down on the floor while they beat and robbed two employees and several customers.  They emptied the cash register and took tip money as well as three cartons of cigarettes.

Two anti-crime patrol officers happened upon the robbery.  As the officers entered the bar, two of the robbers ran into the back, where a bathroom and a utility room were located.  A third robber fled upstairs and out the back entrance.  Officers ordered the men in the bathroom and utility room to exit.  Joshua Quinn emerged from the bathroom, and petitioner emerged from the utility room shortly after.  The officers recovered a gun and stolen proceeds from the bathroom, more

---

[1] Different parts of the record use both "Bower" and "Bowers" for Petitioner's last name. Petitioner signed his habeas papers under the name "Andre Bowers," and I use that formulation.

stolen proceeds from the utility room where petitioner hid, and a second gun from a garbage can upstairs.

Petitioner and co-defendants were charged with (1) twelve counts of Robbery in the First Degree under N.Y. Penal Law § 160.16; (2) four counts of Criminal Possession of a Weapon in the Second Degree under N.Y. Penal Law § 265.03; (3) twelve counts of Robbery in the Second Degree under N.Y. Penal Law § 160.10; (4) six counts of Robbery in the Third Degree under N.Y. Penal Law § 160.05; and (5) six counts of Assault in the Second Degree under N.Y. Penal Law § 120.05.

At trial, one of the co-defendants who had stood lookout testified for the state pursuant to a cooperation agreement. ECF No. 12-3 at 149.[2] The jury convicted petitioner of ten counts of Robbery in the First Degree and five counts of Robbery in the Second Degree. The jury acquitted petitioner of the four counts of criminal possession of a weapon. ECF No. 12-8 at 115–17. Petitioner was sentenced as a second-felony offender to concurrent terms of imprisonment of 19 years for each first-degree robbery count and 12 years for each second-degree robbery count, to be followed by five years of post-release supervision. ECF No. 12-9 at 21–22.

**PROCEDURAL HISTORY**

A. *Direct Appeal*

In his counseled brief on direct appeal, petitioner challenged his conviction on three grounds. First, he claimed that the state had failed to prove his guilt beyond a reasonable doubt and that the verdict was against the weight of the evidence. ECF No. 11 at 47. Second, he argued that the trial court erred by failing to give an adverse inference charge. *Id.* at 58. Petitioner based this claim on the state's failure to preserve a recording of a 911 call he allegedly made from the utility room, which he contended would have proved that he was a victim rather than a perpetrator

---

[2] Citations in this order use the header pagination assigned by ECF.

2

of the robbery. Finally, petitioner argued that his sentence should be reduced in the interest of justice. *Id.* at 67.

The Appellate Division granted petitioner permission to file a *pro se* supplemental brief. In that submission, petitioner raised four "questions" that challenged whether police had probable cause to arrest him, whether the evidence presented to the grand jury was sufficient, and again pressed the complaint that the state had failed to adequately prove his guilt. *Id.* at 142.

The Appellate Division affirmed petitioner's convictions. *People v. Bowers*, 131 A.D.3d 704 (2d Dep't 2015). The court held that the evidence was sufficient to establish petitioner's guilt "under an accomplice theory of liability" and that the verdict was not against the weight of the evidence. *Id.* at 705. It also held that petitioner was not entitled to an adverse inference charge because he had failed to exercise reasonable diligence in attempting to obtain the recording of the 911 call. *Id.* The court found that the sentence imposed was not excessive. *Id.* Finally, it found that police had probable cause to arrest petitioner and rejected his challenge to the sufficiency of the grand jury evidence. *Id.* at 704–05. The Court of Appeals denied leave to appeal and denied reconsideration. *People v. Bowers*, 26 N.Y.3d 1086 (2015); *reconsideration denied*, 27 N.Y.3d 1128 (2016).

B. *Habeas Petition*

Petitioner sought habeas corpus relief in this court. Proceeding *pro se*, petitioner filed a petition raising four claims for relief. First, he renewed his sufficiency and weight of the evidence challenges. ECF No. 1 at 15. Next, he argued that the state's failure to preserve the recording of his 911 call constituted a *Brady* violation. *Id.* at 15–16. Third, he claimed that he is actually innocent and was denied his constitutional rights to due process, a fair trial, confrontation, and to be free of cruel and unusual punishment. *Id.* at 18. Finally, he contended that trial counsel was

3

ineffective in a number of respects. *Id.* at 21. Petitioner conceded that the last two sets of claims were unexhausted but contended that this deficiency should be excused. *Id.*

The state opposed petitioner's petition and urged me to deem his unexhausted claims technically exhausted, but procedurally defaulted. I granted petitioner's motion to stay his petition and hold it in abeyance while he exhausted his claims in state court. *See Rhines v. Weber*, 544 U.S. 269, 275–77 (2005).

C. *Return to State Court*

Petitioner pursued two avenues of postconviction relief in state court. First, he moved the trial court to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. That motion alleged that petitioner was actually innocent and that he was denied his rights to the presumption of innocence, due process, a fair trial, confrontation, and to be free from cruel and unusual punishment. Petitioner argued that the testimony given by NYPD Officer Peter Ferrizz at trial was "flawed and unreliable," and that the testimony of the cooperating co-defendant established petitioner's innocence. In addition, petitioner argued that his call to 911 showed that he was in fact a victim and could not have committed the crime. Petitioner also argued that his trial counsel was ineffective.

The trial court denied petitioner's § 440 motion. It held that he had failed to make a *prima facie* showing of actual innocence. ECF No. 19-3 at 313. Turning to ineffective assistance, it held that trial counsel's "alleged errors would have been apparent from the record and as such should have been raised in prior motions and are procedurally barred." *Id.* at 314. The court determined that regardless of the procedural bar, the claims were meritless because petitioner failed to show that trial counsel's performance was deficient under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 315. The trial court rejected petitioner's claim that the police and prosecutor colluded to frame him for the crime by planting or lying about evidence as "unsubstantiated and

4

baseless." *Id.* at 316. The Appellate Division denied petitioner's request for leave to appeal the ruling. ECF No. 21.

Next, petitioner applied to the Appellate Division for a writ of error *coram nobis*. Despite praising appellate counsel's efforts in the habeas papers he filed in this court, petitioner now contended that appellate counsel was ineffective for failing to raise a claim against the effectiveness of trial counsel. The Appellate Division denied the petition, and the Court of Appeals denied leave to appeal. *People v. Bowers*, 175 A.D.3d 1549 (2d Dep't 2019); 34 N.Y.3d 1075 (2019), *reconsideration denied*, 35 N.Y.3d 940 (2020). The Appellate Division also denied petitioner's motion to reargue his *coram nobis* petition. ECF No. 11-1 at 5.

D. *Resumption of Federal Proceedings*

After exhausting his remedies in state court, petitioner sought to revive his federal habeas petition. I granted two motions by petitioner to amend, correct, or supplement his petition based on his exhaustion efforts and directed the state to respond. ECF Nos. 25, 27. In his amended petition, petitioner argues that his showing of actual innocence allows me to overlook the procedural default of his ineffective assistance of trial counsel claim. He also argues that the state court's rejection of his other claims involved an unreasonable application of clearly established Supreme Court precedent.

**DISCUSSION**

A. *Standard of Review*

The relevant section of the Antiterrorism and Effective Death Penalty Act ("AEDPA") allows a federal court to grant habeas relief to a state prisoner only if a state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 409–10 (2000). A decision "involves an

unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams,* 529 U.S. at 407–08. A state prisoner must therefore demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a "highly deferential standard," requiring that state courts "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation omitted). However, "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

## B. *Prosecutorial and Police Misconduct*

Petitioner rests most of his claims on an alternate version of events. Petitioner asserts that he was a victim of the robbery, not a perpetrator, and that he sought refuge in the utility room to make a 911 call reporting the crime in progress. Petitioner accuses investigating officers of planting or lying about evidence recovered from the utility room. He insists that the district attorney and the officers colluded to frame him for the robbery despite knowing that he was actually an innocent victim. In particular, he accuses Officer Ferrizz of lying on the stand and faults the trial court for allowing the use of evidence vouchered under his co-defendant's name against him.

As the trial court found when considering petitioner's § 440 motion, his claims about state officials planting evidence or colluding to frame him are "unsubstantiated[,] . . . baseless," and without evidentiary support. ECF No. 19-3 at 316. In his habeas petition, petitioner appears to argue that the court violated his constitutional right to due process by allowing an officer to read from evidence vouchers bearing his co-defendant's name. Petitioner claims that this error supports

his theory that the state's officials conspired to frame him using evidence that was properly admissible only against others.

This argument fails. It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions," including those related to admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Rather, a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Id.* at 68. "[T]o establish that an erroneous application of state rules of evidence violates the federal guarantee of due process, [petitioner] must also demonstrate that the state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process." *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013). Even if an erroneous state law evidentiary ruling does rise to the level of constitutional error, it may still be found harmless unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Accordingly, petitioner must show (1) that "the trial court's improper evidentiary ruling was an error of constitutional magnitude" and (2) the error was not harmless under *Brecht*. *Perez v. Phillips*, 210 F. App'x 55, 57 (2d Cir. 2006).

Petitioner portrays Officer Ferrizz's use of evidence vouchers bearing a co-defendant's name to refresh his recollection about what was recovered from petitioner's hiding spot as error. Indeed, he accuses Officer Ferrizz and the prosecutor of "conspir[ing] together to produce [] perjured testimony" in order to frame him. ECF No. 1 at 18, 22. But Officer Ferrizz testified only as to what items were recovered from petitioner's hiding spot. ECF No. 12-1 at 89–96, 98–99. That testimony was corroborated by Sergeant Jack Shapiro, who testified to observing the items in the utility room shortly after petitioner exited the room, but before officers retrieved the items. ECF No. 12 at 70–71. The officers did not assert that the items recovered belonged to petitioner

or that he had placed them in the utility room — the jury was left to make those inferences in view of all the evidence. The prosecutor and petitioner's defense attorney both argued this point in closing, with each urging the jury to accept or reject the inference that petitioner was responsible for the items found in his erstwhile hiding place. ECF No. 12-7 at 103–104 (defense), 134–35 (prosecution). At no point did the officers assert that petitioner's name was on the vouchers, and the vouchers themselves were not admitted into evidence.

In any event, petitioner was prosecuted under an acting-in-concert theory, so even evidence recovered from the person of one of his co-defendants could have been used against him at trial. The fact that evidence recovered from petitioner's hiding spot was misvouchered under the name of a co-defendant does not make its use against him at trial error, much less error of constitutional moment. Because petitioner fails to show error, I need not analyze whether any alleged error would have been harmless.

C. *Sufficiency of the Evidence*

Petitioner argues that the evidence was legally insufficient. Evidence is sufficient where "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Appellate Division concluded that the evidence was sufficient to convict petitioner, 131 A.D.3d at 705, and that determination is due deference under AEDPA. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

The evidence showed that three masked men attempted to rob the Jen-U-Win Sports bar at gunpoint. When police arrived, two of the men fled and hid in rooms inside the bar while another escaped out the back. When police demanded that the hidden men surrender themselves, petitioner emerged from one of the two rooms. After arresting petitioner, police recovered from his hiding spot (1) clothing matching what witnesses saw one of the robbers wearing, and (2) a blue laundry

bag that witnesses saw one of the robbers carrying. Inside the laundry bag, police found cartons of cigarettes and money, items which the robbers had gathered from the bar before police arrived. Taken together — and viewed in the light most favorable to the prosecution — this evidence amply supported the jury's decision to convict petitioner of robbery.

### D. *Ineffective Assistance of Trial Counsel*

Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted and meritless. His claims about counsel's performance are, at bottom, a repackaging of his assertions related to prosecutorial and police misconduct. Petitioner faults his trial counsel as ineffective for failing to pursue those theories to impeach the state's witnesses or show his innocence at trial. For example, petitioner argues that trial counsel was ineffective for failing to use the fact that evidence against him was vouchered under the name of a co-defendant to impeach Officer Ferrizz. For the reasons discussed elsewhere in this order, petitioner's claims about prosecutorial and police misconduct do not stand up on their own. Accordingly, they cannot support a related claim of ineffective assistance of counsel.

To prove ineffective assistance of counsel, petitioner must show that (1) his counsel's performance was deficient, and (2) he was prejudiced as a result. *Strickland*, 466 U.S. at 687. Federal habeas courts conduct a "doubly deferential" review of ineffective assistance of counsel claims denied on the merits by state courts, as petitioner's claim was. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *see* ECF No. 19-3 at 314–16 (denying the ineffective assistance of counsel claim as procedurally barred and meritless). A reviewing court must first "take a 'highly deferential' look at counsel's performance" under *Strickland* and then examine whether the state court's decision to deny relief under that standard was "necessarily unreasonable." *Cullen*, 563 U.S. at 190. To succeed, a habeas petitioner must therefore overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*,

466 U.S. at 689, and then demonstrate that "there is no possibility fairminded jurists could disagree" that the state court's contrary determination conflicts with clearly established federal precedents. *Harrington*, 562 U.S. at 102; *see also Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010).

Petitioner cannot clear this high bar. Trial counsel was not ineffective for declining to focus on petitioner's argument about evidence vouchers. Under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690. Counsel has no constitutional duty to "raise every nonfrivolous issue requested by the client." *Jones v. Barnes*, 463 U.S. 745, 750–51 (1983). Trial counsel attempted to undermine Officer Ferrizz by cross-examining him on inconsistencies about what items were recovered from the utility room and how they were documented. *See, e.g.*, ECF No. 12-2 at 61–62. It is far from clear that attempting to impeach Officer Ferrizz with clerical errors on his evidence vouchers would have meaningfully strengthened this approach. Trial counsel "could have reasonably concluded that further cross-examination on relatively unimportant matters would have confused or fatigued the jury." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992). Trial counsel also argued in closing that the recovery of proceeds from the utility room, standing alone, was insufficient to link petitioner with the crime itself. ECF No. 12-7 at 103–04. Petitioner has not established that his trial counsel's performance was deficient, so he cannot show that he was prejudiced.

In any event, petitioner's ineffective assistance of counsel claim is procedurally barred. In most cases, a federal habeas court may not review a claim where the state court's adjudication rested on an independent and adequate state law ground, including procedural bars. *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003). The trial court, when ruling on petitioner's § 440 motion, held that his ineffective assistance claim was record-based and therefore procedurally

barred because it could have been — but was not — raised in his direct appeal. This claim is similarly barred from federal review unless petitioner can demonstrate (1) cause and prejudice to excuse his default, or (2) that failure to hear the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009).

E. *Actual Innocence*

Petitioner can qualify for the miscarriage of justice exception to procedural default by showing that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This is typically referred to as the "actual innocence" gateway. It is not clear from Petitioner's papers whether he is attempting to pass through the actual innocence gateway, assert a free-standing claim for relief based on actual innocence, or both.

Petitioner's argument for actual innocence relies on his theory that state officials colluded to frame him for the robbery. For the reasons discussed above, petitioner's assertions of prosecutorial and police misconduct are baseless. He has presented no new evidence in this proceeding to support those allegations. Moreover, his version of events is unpersuasive and belied by the evidence that *is* in the record. In petitioner's telling, he was an innocent bar patron who, once he realized that robbers had entered the establishment, took refuge in the utility room and "called 911 as he hid from the masked men." ECF No. 25 at 2. To explain the fact that proceeds of the robbery were found in the utility room after he exited, petitioner alleges that the police either planted the evidence, lied about evidence they never actually recovered, or committed some combination of these acts of misconduct.

Petitioner's trial counsel presented this theory of innocence to the jury. ECF No. 12-7 at 114. Trial counsel argued that "[petitioner] is accused of participating in a robbery of this location and yet, there is proof, that he's calling 911. . . . in the middle of a robbery he is supposedly committing, he's calling 911. . . . Why was Andre Bower [sic] in that closet? Well, maybe because the location that he was in was getting robbed by men with guns? Unfortunately, the evidence doesn't really answer that question." *Id.* The prosecutor responded that "to believe that [petitioner and Mr. Quinn] are mistakenly apprehended by the police and that this is some sort of gross assumption that is going on, you have to believe that the real robbers . . . had gotten away, and I submit to you that's . . . inconsistent with what the evidence shows." ECF No. 12-8 at 2. The jury was evidently unpersuaded by petitioner's version of events.

Petitioner has not brought forth any "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" not available at trial to support his account. *Schlup*, 513 U.S. at 324. Indeed, he has presented no new evidence of any kind, and essentially asks this court to re-weigh the evidence presented to the jury and adopt an explanation it necessarily rejected. Setting aside that petitioner's request asks the court to step far outside its proper role in this proceeding, his explanation for how he came to be found in a closet containing proceeds of the crime is both far-fetched and unpersuasive. Even if petitioner did have a copy of a 911 tape bearing out that he attempted to report the crime, that evidence would be consistent with actions taken by a robbery participant attempting to pass himself off as a bystander once he realized the jig was up.

Petitioner has failed to show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. Petitioner fails to present any new evidence, much less evidence that would establish that it is more likely than not that "any reasonable juror would have reasonable doubt" about his guilt. *House*, 547

12

U.S. at 538; *see also Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial") (internal quotation omitted). Consequently, petitioner fails to make out a claim of actual innocence, regardless of whether that showing is intended to excuse his procedural default of other claims or provide a freestanding basis for relief. To the extent petitioner intends the latter, his claim fails for the independent reason that the Supreme Court has not finally resolved whether there is a federal constitutional right to be released on proof of actual innocence. As Chief Justice Roberts has observed, writing for the Court: "[w]hether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet." *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71 (2009).

F. *Preservation of 911 Recording*

Petitioner argues that he was entitled to an adverse inference jury instruction because the state failed to preserve a recording of the 911 call he made the night of the robbery, which he contends was material under *Brady v. Maryland*, 373 U.S. 83 (1963). He claims that this recording would have demonstrated that he was a victim of the robbery who attempted to alert the police, rather than one of the perpetrators.

The propriety of a state trial court's jury instructions is generally a matter of state law, and a claim raised on that basis is not cognizable on habeas review unless the challenged instruction "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The entitlement to an adverse inference charge arises under "the New York law of evidence," not the federal constitution. *People v. Handy*, 20 N.Y.3d 663, 669 (2013). This state-law claim was already raised and rejected in petitioner's direct appeal because he failed to "exercise reasonable due diligence in obtaining the recording." *Bowers*, 131

13

A.D.3d at 705. Petitioner does not argue that the state trial court's allegedly erroneous refusal to give the charge — or the Appellate Division's affirmance of that decision — rises to the level of a federal constitutional violation. Accordingly, his claim is a matter of state law that is not cognizable on habeas review.

Regardless, petitioner's claim would fail even if evaluated as a potential constitutional violation under *Brady*. A *Brady* violation has three elements: (1) the evidence must be favorable to the accused either because it is exculpatory or impeaching, (2) that evidence must have been suppressed by the government, either willfully or inadvertently, and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). But evidence is not "suppressed" for *Brady* purposes "if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) (internal quotation omitted); *see also United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (explaining that if "defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government" and therefore no *Brady* violation).

Petitioner contends that a recording of a 911 call he made was potentially exculpatory, and that he might have taken the stand in his own defense if the recording had provided corroboration for his version of events. As the caller, petitioner was uniquely aware of the "essential facts permitting him to take advantage" of that allegedly exculpatory recording. *DiSimone*, 461 F.3d at 197. Indeed, petitioner was the *only* person — other than the 911 operator — who knew for certain what he said on that call. Petitioner could have taken steps to obtain the recording on his own, but opted to wait until the trial was underway to make the request of the prosecution. In addition, a record of the call disclosing its "sum and substance," if not the details, was available at trial. ECF

No. 12-6 at 45–50. The government did not suppress the 911 recording and there was no *Brady* violation.

Petitioner also faults the prosecution for failing to preserve the recording after he indicated it might be *Brady* material. Under federal law, the state's duty to preserve evidence is limited "to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Here, the record indicates that the prosecution made good faith, if unsuccessful, efforts to obtain the recording requested by petitioner. ECF No. 12-5 at 155–58. The prosecution also attempted, again unsuccessfully, to make the 911 operator who took the call available to testify. ECF No. 12-6 at 42–50. Petitioner's attempts to show bad faith on the part of the police officers involved in the investigation fail here, as they did in relation to other claims.

## CONCLUSION

The petition for relief pursuant to 18 U.S.C. § 2254 is denied. I decline to issue a certificate of appealability.

                                                                               **SO ORDERED.**

                                                                       *Edward R. Korman*

Brooklyn, New York                                                 Edward R. Korman
November 17, 2020                                           United States District Judge